IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LAWRENCE RAYMOND                                 PLAINTIFF

v.                        Civil No. 05-6023

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                               DEFENDANT

### MEMORANDUM OPINION

Lawrence Raymond (hereinafter "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his applications for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, and for supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI, *42 U.S.C. § 1381a*.

The parties have each filed appeal briefs (Doc. #4 & 5). This matter is now ready for consideration. The history of the administrative proceedings is contained in the respective briefs and will not be recited herein, except as is necessary.

Plaintiff, whose date of birth is September 13, 1953, was 49 years of age at the time of the administrative hearing and the ALJ's decision (T. 246, 11). Plaintiff has the equivalent of a high school education (T. 247, 19). Plaintiff resides in Hot Springs with his wife and four minor children (T. 246). Plaintiff's past relevant work includes work as a carpenter's helper, restorer and remodeler (T. 89).

Plaintiff alleges an inability to work due to: insulin dependent diabetes mellitus with retinopathy, neuropathy with ulcerations; degenerative arthritis; numbness in hands, fingers, feet

and toes; calcific tendonitis; right rotator cuff tendonitis; bilateral degenerative arthritis of the knees; hepatitis C with ascites; Grade 1 spondylolisthesis at L5-S1 associated with severe degenerative changes within S1; sleep apnea; morbid obesity; hypertension; erythmia; multiple functional limitations; and, chronic pain in the knees, back, wrist and shoulder (Doc. #4; T. 205-206).

The Social Security Administration denied plaintiff's applications initially and on reconsideration. Plaintiff then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was held on October 29, 2002, before ALJ Don Rebsman in Hot Springs, Arkansas (T. 243-287). The ALJ rendered a decision adverse to Plaintiff on February 24, 2003 (T. 11-20).

The Plaintiff then petitioned the Appeals Council for review on March 24, 2003 (T. 7). The Appeals Council denied review on January 29, 2003 (T. 4-6), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the unfavorable decision (Doc. #1, 4). This matter is before the undersigned by consent of the parties (Doc. #2).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. See *Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)*. Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See *Craig v. Apfel, 212 F.3d 433,*

*436 (8th Cir.2000).* As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, see *id.*, or because we would have decided the case differently. See *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993).*

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b).* If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d).* If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e).* If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f).* If so, benefits are denied; if not, benefits are awarded.

**Discussion:**

AO72A
(Rev. 8/82)

The ALJ evaluated the plaintiff's claim according to the five-step sequential evaluation analysis prescribed by the social security regulations (T. 11-20). See *20 C.F.R. §§ 404.1520(a)-(f)*; see also *Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987)* (describing five-step analysis). At the first step, the ALJ found "the issue on whether or not the claimant's work after his alleged onset date was [substantial gainful activity] level is rendered moot by a finding of not disabled [at step five of the sequential analysis] (T. 12). At steps two and three, the ALJ determined that the plaintiff had severe, medically determinable impairments[1], but no impairment or impairments that meet or equal the level of severity for any impairment listed in *Appendix 1, Subpart P, Regulations No. 4* (T. 12). See *20 C.F.R. § 404.1521; Bowen v. Yuckert, supra*. At Step 4 of the sequential analysis, the ALJ determined that Plaintiff retained the residual functional capacity to perform a wide range of sedentary work, but could not return to his past relevant work (T. 15, 17). The ALJ then determined, at the final step of the sequential analysis, that Plaintiff is not disabled as the VE testimony established that there are jobs in sufficient numbers which Plaintiff can perform (T. 15-19).

Plaintiff raises several arguments on appeal, however, the primary question before the undersigned is whether the ALJ properly considered Plaintiff's alleged lack of financial resources with which to obtain medication and treatment. This issue is relevant in light of the ALJ's finding that the Plaintiff's failure to avail himself frequent medical treatment is a sufficient factor to detract from Plaintiff's credibility (T. 16).

---

[1] The impairments considered severe by the ALJ were: diabetes with retinopathy; peripheral neuropathy; degenerative arthritis of the AC joint in the right shoulder; calcific tendonitis of the right rotator cuff with rotator cuff tendonitis; bilateral degenerative arthritis of the knees; hepatitis C with ascites; and, hypertension.

AO72A
(Rev. 8/82)

The ALJ stated:

> Also significant is the lack of more frequent medical treatment. The medical record shows that the [plaintiff] was initially seen for complaints of right knee pain in March 1999, but was not seen again with complaints of right knee pain until he sustained an on-the-job injury in June 2000 (approximately 15 months later). He has alleged severe back pain, but was examined only once for complaints of back pain in July 1999 after being hit from behind by another vehicle. In addition, the record shows that he was seen only on three occasions in May 2001, June 2001 and August 2001 for complaints of pain in his right shoulder and has not sought further treatment since his last examination in August 2001. The record further reveals that the [plaintiff] has never sought treatment as a result of his hypertension being out of control, or has been hospitalized due to his hypertension. In addition, since November 2001, there are no recent medical records in the file for treatment of any of his impairments. **This failure to seek more frequent treatment is inconsistent with the complaints of disabling symptoms**. Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987). **Allegations of disabling symptoms may be discredited by evidence that the claimant has received only minimal medical treatment**. Williams v. Bowen, 790 F.2d 713 (8th Cir. 1986).

(T. 16)(emphasis added).

Generally, if a claimant does not follow a prescribed treatment plan without a good reason, he or she will not be found disabled. *20 C.F.R. § 416.930(b) (1984)*. However, the lack of financial resources to pay for medical treatment and/or medication may justify the failure to pursue treatment or follow a treatment plan. *Brown v. Heckler 767 F.2d 451, 452 (8th Cir.1985); Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir.1984)*.

Here, the issue of a lack of financial means was raised by the Plaintiff on a number of occasions, including during his administrative hearing as well as during the medical treatment that he received.

At hearing, Plaintiff testified that he lives with his wife and four minor children (T.

246). At the time of hearing, Plaintiff had three sons and a daughter who were aged as follows: a 14-year-old son; a 13-year-old daughter; an 11-year-old son; and, an 8-year-old son (T. 246). The family of six lives on an acre and a half, in a house that Plaintiff "built out of scrap material [that he] scrapped out of a burnt condominium complex" (T. 247). Plaintiff testified that his "[c]hurch and church folks" had been very gracious and helped him and his family from time to time (T. 254, 274). Plaintiff testified that he receives food stamps (T. 273). Plaintiff's wife testified that the family electric bill has been paid by donations they have received from their church (T. 277).

In his February 14, 2001, Social Security Supplemental Disability Interview Outline, Plaintiff reported that he can not pay his bills because he has "no money" (T. 98). Due to his lack of financial means, Plaintiff was given sample medications by medical providers on: July 12, 2000; June 14, 2000; January 14, 2001; March 28, 1999; August 6, 2001; and September 20, 2001 (T. 112, 113, 138, 218, 241). During a January 15, 2001, emergency room visit Plaintiff reported that he could not afford the supplies to test his blood sugar despite his diagnosis of diabetes mellitus with retinopathy and neuropathy (T. 127). On January 14, 2001, Plaintiff also sought treatment at an emergency room. During the course of his treatment, the emergency room physician documented Plaintiff's report that he could not afford the strips necessary to test his blood glucose level. The emergency room physician documented Plaintiff's report that he receives most of the medication he takes by way of samples, as well as Plaintiff's request that he be allowed to allowed to administer the appropriate dose of insulin at home rather than being charged for administration of said medication by the emergency room staff (T. 138). In a letter to Plaintiff's physician, dated June 25, 2001, Karen M. Hoffman, a Licensed Occupational

Therapist, wrote the following:

> ...Continued therapy would be helpful for overall endurance and shoulder strengthening; however, as you are aware finances are at a minimum for the family.

(T. 182).

On August 6, 2001, his treating physician noted "[a]t this time he really cannot afford a[n] MRI to determine whether or not he has a rotator cuff tear and to determine what the status of his rotator cuff is." (T. 241).

The ALJ does not discuss the impact of plaintiff's alleged lack of finances on his ability to access treatment, specifically the recommended MRI. This constitutes error. To the extent the ALJ found plaintiff not entirely credible, due to a lack of medical treatment and/or prescription medication, we note the previously mentioned record citations in which the Plaintiff testified to and otherwise reported his lack of financial means. The record reflects Plaintiff raised the issue of the size of his family and his receipt of no income and/or no money with which to obtain medical treatment and/or prescription medications. Despite the Plaintiff's alleged inability to obtain treatment due to a lack of financial means, the ALJ failed to address this issue when determining that Plaintiff was not credible or disabled.

Certainly, the failure to follow a prescribed course of treatment may be excused by a plaintiff's lack of funds. *Tome v. Schweiker, 724 F.2d at 714.* Likewise, medication or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered. To a poor person, a medicine that he cannot afford to buy does not exist. *Dover v. Bowen, 784 F.2d 335, 337 (8th Cir.1986); Benson v. Heckler, 780 F.2d 16, 18 (8th Cir.1985); Tome v. Schweiker, 724 F.2d at 714.*

AO72A
(Rev. 8/82)

Upon remand, the ALJ should consider and discuss what effect, if any, Plaintiff's alleged lack of financial means to obtain his treatment, medical supplies and prescribed medications had on the Plaintiff's claim for disability, as well as Plaintiff's credibility. The undersigned acknowledges that the ALJ's decision may be the same after proper analysis. Nonetheless, proper analysis must occur. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).*

**Conclusion:**

Accordingly, we conclude that the ALJ's decision denying SSI benefits to the Plaintiff is not supported by substantial evidence and should be reversed. We further conclude that this matter should be remanded to the Commissioner for further consideration consistent with this decision.

ENTERED this 31st day of March, 2006.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)